UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| SANTAS REYES AVILA GARCIA,<br><br>      Plaintiff,<br> v.<br><br>KRISTI NOEM et al.,<br><br>      Defendants. | CASE NO. 3:25-cv-06008-DGE<br><br>ORDER DENYING PLAINTIFF'S MOTION FOR A TEMPORARY RESTRAINING ORDER (DKT. NO. 2) |

  Plaintiff is subject to a final order of removal. On August 26, 2025, Plaintiff submitted a T Visa application with United States Citizenship and Immigration Services ("USCIS"). Notwithstanding, Immigration and Customs Enforcement ("ICE") detained Plaintiff on September 15, 2025 and now seeks to enforce the removal order.

  On November 11, 2025, Plaintiff filed a complaint asserting two causes of action: Mandamus and Violation of the Administrative Procedures Act ("APA"). Plaintiff asserts Defendants have unreasonably delayed the adjudication of Plaintiff's T visa application. She seeks a judgment (1) declaring Defendants have unlawfully withheld or unreasonably delayed

adjudication of Plaintiff's T visa application and (2) ordering Defendants to adjudicate or issue a bona fide determination pursuant to 8 C.F.R. § 214.205(a) within 30 days or within a reasonable period of time. (Dkt. No. 1 at 12.)

Plaintiff now moves the Court for a temporary restraining order ("TRO") staying Plaintiff's removal from the United States pending the Court's decision on her Mandamus and APA claims. (Dkt. No. 2 at 7.) For the reasons discussed herein, Plaintiff's motion is DENIED.

## I.    BACKGROUND

Plaintiff is a native of Guatemala. (Dkt. No. 9 at 2.) Plaintiff last entered the United States in the early-1990s. (*Id*.) Plaintiff applied for and was denied asylum. (*Id*.) After failing to appear at an immigration court proceeding, Plaintiff was ordered removed in absentia on October 30, 1997. (*Id*.) ICE arrested Plaintiff in Yakima, Washington on December 6, 2007. (*Id*.) Plaintiff filed a motion to reopen her immigration proceedings on December 12, 2007, and the motion was granted on January 11, 2008. (*Id*.) Plaintiff then filed for cancellation of removal. (*Id*.) On April 24, 2009, an immigration judge denied Plaintiff cancellation of removal because she did not have the requisite ten years of physical presence in the United States necessary for relief. (*Id*.) Plaintiff was then granted voluntary departure on May 21, 2009. (*Id*.) Plaintiff did not depart, and the order became a final order of removal. (*Id*.) Plaintiff then filed another motion to reopen on August 11, 2009. (*Id*.) On October 26, 2009, the order was denied. (*Id*.) Plaintiff appealed to the Board of Immigration Appeals ("BIA"). (*Id*.) The BIA denied her appeal on June 19, 2012 and her motion to reconsider on November 21, 2012. (*Id*. at 3.)

Plaintiff filed a Form I-914 Application for T Nonimmigrant Status on August 26, 2025. (Dkt. No. 2-1 at 1.) On September 4, 2025, Plaintiff's request for a stay of removal was filed,

but it was denied.[1]  (*Id.* at 2.)  Plaintiff reported to the Richland, Washington ICE office on September 15, 2025 where she was taken into custody and then transferred to Northwest ICE Processing Center ("NWIPC") for removal.  (*Id.*; Dkt. No. 9 at 3.)  Plaintiff remains detained.

On November 11, 2025, Plaintiff received a notice she would be removed "imminently."  (Dkt. No. 2-1 at 2.)  Plaintiff's husband had received a similar letter the day prior; he was transferred to El Paso, Texas on either November 10, 2025 or November 11, 2025.  (*Id.*)  On November 11, 2025, Plaintiff filed her complaint and moved for a TRO.  (Dkt. Nos. 1, 2.)  On November 12, 2025, the Court conditionally granted Plaintiff's TRO enjoining Defendants from transferring or removing her from NWIPC until the TRO was adjudicated.  (Dkt. No. 7.)[2]  As of November 18, 2025, Defendants had not responded to Plaintiff's request for a T visa bona fide determination.

## II. DISCUSSION

### A. Legal Standard

Federal Rule of Civil Procedure 65(b) governs the issuance of a TRO.  "The legal standard for a TRO is substantially identical to the standard for a preliminary injunction."  *Facebook, Inc. v. BrandTotal Ltd.*, 499 F. Supp. 3d 720, 732 (N.D. Cal. 2020).  To obtain injunctive relief, the moving party must show: (1) a likelihood of success on the merits; (2) a likelihood of irreparable harm to the moving party in the absence of preliminary relief; (3) that the balance of equities tips in favor of the moving party; and (4) that an injunction is in the

---

[1] Plaintiff asserts it was denied, but a copy of the denial decision was not provided.  At oral argument on November 18, 2025, counsel for the Defendants stated she requested information about Plaintiff's stay request but was uncertain as to the final outcome.

[2] Plaintiff was briefly transported to another detention facility prior to the Court's November 12, 2025 provisional order.  The Parties confirmed Plaintiff has since been returned to the NWIPC and remains in detention.

public interest. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).  Generally, a TRO is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Id*. at 22.  The moving party has the burden of persuasion. *Hill v. McDonough*, 547 U.S. 573, 584 (2006).  The third and fourth "factors merge when the Government is the opposing party." *Nken v. Holder*, 556 U.S. 418, 435 (2009).

The Ninth Circuit has also articulated an alternative "sliding scale" approach pursuant to which the first and third *Winter* factors are analyzed on a continuum; under such standard, a weaker showing on the merits, combined with a stronger demonstration on the balancing test, might warrant preliminary injunctive relief, assuming the second and fourth *Winter* elements are met. *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131–1135 (9th Cir. 2011).  Under this "sliding scale" method, the movant need only raise "serious questions going to the merits," but the balance of hardships must tip "sharply" in the movant's favor. *Id.* at 1131–1132; *see also Farris v. Seabrook*, 677 F.3d 858, 864 (9th Cir. 2012).

**B. Jurisdiction**

The Defendants challenge the Court's authority to hear Plaintiff's claims asserting that the Court "lacks jurisdiction to halt the execution of a valid order of removal." (Dkt. No. 8 at 6.) Defendants argue 8 U.S.C. §§ 1252(a)(5), (b)(9), and (g) bar jurisdiction.

1. 8 U.S.C. 1252(g)

In general, "no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien." 8 U.S.C. § 1252(g).  However, where a plaintiff's claim "instead constitute[s] general collateral challenges to unconstitutional practices and policies used by the agency," § 1252(g) will not bar jurisdiction. *Barahona-Gomez*

*v. Reno*, 236 F.3d 1115, 1118 (9th Cir. 2001) (quoting *McNary v. Haitian Refugee Ctr., Inc.*, 498 U.S. 479, 392 (1991); *Fatty v. Nielsen*, No. C17-1535-MJP, 2018 WL 3491278, at *1 (W.D. Wash. July 20, 2018). Accordingly, a "district court may consider a purely legal question that does not challenge the Attorney General's discretionary authority, even if the answer to that legal question—a description of the relevant law—forms the backdrop against which the Attorney General later will exercise discretionary authority." *United States v. Hovsepian*, 359 F.3d 1144, 1155 (9th Cir. 2004).

§ 1252(g) does not bar Plaintiff's Mandamus and APA claims in this case. This is because such claims are more properly categorized as collateral legal challenges to the process by which the Defendants seeks to remove Plaintiff. Here, Plaintiff argues the Defendants have withheld or unreasonably delayed a bona fide determination of her T Visa application as required by 8 C.F.R. 214.205(a).[3] Plaintiff's claims present purely legal questions that do not challenge the Defendant's discretionary authority, even though the answer to the legal questions may form the backdrop against which the Defendants may later exercise discretionary authority. *See Fatty v. Nielsen*, No. C17-1535-MJP, 2018 WL 3491278, at *1 (W.D. Wash. July 20, 2018) (concluding § 1252(g) did not bar petitioner's due process and APA claims despite the existence of a final order of removal because the claims were "more properly categorized as collateral legal and constitutional challenges to the process by which the government seeks to remove him"). Thus, 1252(g) does not bar jurisdiction to hear Plaintiff's claims.

    2.  8 U.S.C. §§ 1252(a)(5), (b)(9)

---

[3] 8 C.F.R. 214.205(a) states: "If an Application for T Nonimmigrant Status is submitted on or after August 28, 2024, USCIS will conduct an initial review to determine if the application is bona fide."

8 U.S.C. §§ 1252(a)(5), (b)(9) also do not bar jurisdiction. § 1252(a)(5) provides that it is "the sole and exclusive means for judicial review of an order of removal." And § 1252(b)(9) is a "zipper clause that consolidates all questions of law and fact . . . arising from any action taken or proceeding brought to remove an alien into a petition for review." *Ibarra-Perez v. U.S.*, 154 F.4th 989, 1000 (9th Cir. 2025) (internal quotations omitted) (quoting *Martinez v. Napolitano*, 704 F.3d 620, 622 (9th Cir. 2012). But § 1252(a)(5) only applies where a plaintiff challenges their removal order, *see id.*, and Plaintiff is not challenging her removal order but rather the timing of the adjudication of her T visa application. Likewise, § 1252(b)(9) does not apply when a plaintiff brings a claim arising after completion of removal proceedings, *id.*, and, here, Plaintiff's Mandamus and APA claims arose well after her removal proceedings concluded.

Accordingly, the Court has jurisdiction to hear Plaintiff's Mandamus and APA claims—though for reasons stated below, having authority to hear Plaintiff's claims is distinct from authority to enter a stay of removal pending a decision on Plaintiff's claims.

**C. Plaintiff's request to stay removal lacks a sufficient nexus to the claims Plaintiff raises in her complaint.**

Even assuming Plaintiff is successful in establishing Defendants unreasonably delayed in issuing a bona fide determination of her T visa application in violation of the APA and that Defendants should be ordered to issue a determination within 30 days or reasonably soon thereafter, the relief sought in *this* motion—a stay of removal—lacks a sufficient nexus to the Plaintiff's claims.

In *Raghav v. Jaddou*, the plaintiff sought a temporary restraining order staying his removal until his U visa application was adjudicated or until a bona fide determination of his application was made. No. 2:25-cv-00408-DJC-JDP, 2025 WL 373638, at *1 (E.D. Cal. Feb. 3, 2025). The relief sought in the plaintiff's underlying complaint was based solely on the

Mandamus Act and the APA. *Id*. The district court identified that the "scope of the claim properly before this Court concern[s] the reasonableness of the delay. This is [a] limited inquiry that does not involve any determination of whether Plaintiff's [U visa] application should be granted or denied or if it is a bona fide application." *Id*. at *2. The court also noted that "whether an individual has filed an application for a U-Visa does not preclude their removal from the United States by ICE pursuant to a final order[.]" *Id*. (citing 8 C.F.R. § 214.14(c)(1)(ii)). The court further identified that granting the petitioner's full relief on his Madamus Act and APA claims did not guarantee the petitioner's application would be approved and his removal prevented: "regardless of whether Plaintiff ultimately obtains an order directing adjudication of his application, USCIS may still deny Plaintiff's request for a U-visa." *Id*. As a result, the court concluded that granting a stay of removal until the petitioner's U visa "application is adjudicated or until a Bona Fide Determination is made is beyond the scope of what is requested in the [c]omplaint." *Id*.

     As in *Raghav*, only Madamus Act and APA claims are asserted in Plaintiff's complaint. The complaint seeks only to compel an adjudication (or a bona fide determination) of her T visa application. The scope of Plaintiff's claims concerns the reasonableness of the delay in issuing a decision, which is a limited inquiry that does not involve the determination of whether Plaintiff's T visa application should be granted or denied or whether it is a bona fide application. The filing of a T visa application does not preclude enforcement of a removal order. *See* 8 C.F.R. 215.204(a)(2)(i).[4] And regardless of whether the Court orders USCIS to issue a bona fide determination, USCIS may still decide Plaintiff's T visa application is not bona fide.

---

[4] 8 C.F.R. 215.204(a)(2)(i) states: "The filing of an Application for T Nonimmigrant Status has no effect on DHS authority or discretion to execute a final order of removal, although the applicant may request an administrative stay of removal pursuant to 8 C.F.R. 241.6(a)."

At oral argument, Plaintiff asserted *Jimenez v. Dept. of Homeland Security*, No. 2:22-cv-00967-SSS-JPRx, 2022 WL 19410308, at *1 (C.D. Cal. Nov. 14, 2022), supports her argument that a bona fide determination is required before the Defendants can exercise their discretion to remove Plaintiff. *Jimenez* involved the interpretation of 8 U.S.C. § 1227(d)(1) which states in relevant part, "If the Secretary of Homeland Security determines that an application for [T or U] nonimmigrant status . . . filed for an alien in the United States sets forth a prima facie case for approval, the Secretary may grant the alien an administrative stay of a final order of removal[.]" *Id*. at *3. The *Jimenez* court concluded "the prima facie determination [was] a precondition to the Secretary exercising their discretion" under § 1227(d)(1). *Id*. at *4. It then went on to state that the government defendants "had a ministerial duty to make a prima facie determination on Plaintiffs' U-Visa application *before* exercising [their] discretion to remove the Plaintiffs." *Id*.

The Court does not find *Jimenez* persuasive for purposes of the issues presented in this case. It is unclear how *Jimenez* reached the conclusion that a prima facie determination is required prior to removal. The Court agrees that under § 1227(d)(1), if the Secretary makes a favorable prima facie determination the Secretary may grant an administrative stay of removal, but § 1227(d)(1) says nothing about the timing of the prima facie determination relative to removal. Absent from § 1227(d)(1) is any language stating that the filing of a T or U visa application grants an automatic stay of removal until the Secretary issues a prima facie determination.

Instead, the Court agrees with *Raghav*, Plaintiff's request to stay removal until the issuance of a bona fide decision of her T visa application is beyond the scope of the relief requested in Plaintiff's complaint.[5]

### D. Analysis of likelihood of success on the merits

Even if there existed a nexus between the relief sought in this motion and Plaintiff's current claims, Plaintiff has not established likelihood of success on the merits or a serious questions going to the merits. First, the Court finds Plaintiff's Mandamus claim not actionable because mandamus claims are an "extraordinary remedy" only to be used when there is no "adequate alternative remedy." *Jaynes v. Johnson*, No. 01-35657, 2003 WL 21212633, at *1 (9th Cir. May 22, 2003) (quoting *Tucson Airport Authority v. General Dynamics Corp*, 136 F.3d 641, 648 (9th Cir. 1998); *Nova Stylings v. Ladd*, 695 F.2d 1179, 1180 (9th Cir. 1983)). Here, Plaintiff's APA claim provides an adequate alternative remedy. Functionally, Plaintiff's Mandamus claim turns on her APA claim because the Court would not order USCIS to adjudicate Plaintiff's T visa application absent Plaintiff establishing USCIS has unreasonably delayed adjudication or the issuance of a bona fide determination. Accordingly, the Court will consider only Plaintiff's APA claim.

Under 5 U.S.C. § 706(b), federal courts "shall . . . compel agency action . . . unreasonably delayed." Claims of agency unreasonableness are governed by the following factors, colloquially referred to as the *TRAC* factors:

---

[5] Although the Defendants identify that *Fatty* held "the court has jurisdiction to review T visa applicant's due process claim and stay[] removal pending the adjudication of his T visa application" (Dkt. No. 8 at 9), Plaintiff cites *Fatty* only for the proposition that USCIS's sole authority to review T visa applications "underscor[es] the agency's duty to adjudicate these applications" (*see* Dkt. No. 11 at 5). And when asked by the Court at oral argument, Plaintiff's counsel confirmed Plaintiff only sought to advance Mandamus and APA claims, and further conceded she was not advancing a due process claim.

ORDER DENYING PLAINTIFF'S MOTION FOR A TEMPORARY RESTRAINING ORDER (DKT. NO. 2) - 9

  (1) The time agencies take to make decisions must be governed by a 'rule of reason'; (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency in the enabling statute, that statutory scheme may supply content for this rule of reason; (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake; (4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority; (5) the court should also take into account the nature and extent of the interests prejudiced by the delay; and (6) the court need not 'find an impropriety lurking behind agency lassitude in order to hold that agency action is 'unreasonably delayed.'

*Vaz v. Neal*, 33 F.4th 1131, 1137 (9th Cir. 2022) (quoting *Telecommunications Research & Action Ctr. v. FCC*, 750 F.3d 70, 79–80 (D.C. Cir. 1984)).

    i. Factor 1: "rule of reason"

  In considering a rule of reason, "whether the time for agency action has been reasonable" is considered. *Nat. Res. Def. Council, Inc. v. EPA*, 956 F.3d 1134, 1139 (9th Cir. 2020). "It is the 'most important' factor, 'though it, like the others, is not itself determinative." *Vaz*, 33 F.4th at 1138 (quoting *A Cmty. Voice v. EPA*, 878 F.3d 779, 786 (9th Cir. 2017)).

  Here, Plaintiff does not identify any authority to support the proposition that a T visa application should be adjudicated, or that a bona fide determination should be made, within three months after a T visa application is filed. Plaintiff also presents no data on how fast T visa applications normally are processed for a bona fide determination or complete adjudication. Defendants likewise fail to present any evidence on average length of time a bona fide determination is made but do present data indicating complete adjudication occurs on average within 25 months. (Dkt. No. 8 at 13.) Defendants also identify that 3,906 T visa applications were filed in the third quarter of Fiscal Year 2025 and that at present there are 33,114 T visa applications pending. (*Id.* at 12–13.) Considering these figures, the Court finds that the time for agency action—in this case approximately three months—has not been out of the ordinary such that a rule of reason has been violated.

Accordingly, the first, and most important, *TRAC* factor weighs in favor of Defendants and against Plaintiff.

### ii.  Factor 2: Congressional timetables

The second *TRAC* factor allowing Congressional timetables to supplement the rule of reason also weighs against Plaintiff.  While Plaintiff attempts to argue T visa adjudications should be governed by 8 U.S.C. § 1571(b) which notes it "is the sense of Congress that the processing of an immigration benefit application should be completed no later than 180 days after the initial filing," § 1571(b) does not mandate adjudication within 180 days.  Even accepting the 180-day time frame contemplated by § 1571(b) as the benchmark for adjudicating an application, 180 days have not passed in this instance.  Moreover, Congress in creating the T visa did not mandate that the filing of a T visa application automatically requires the application to be adjudicated prior to the enforcement of a removal order.

Accordingly, the second *TRAC* factor weighs in favor of Defendants.

### iii.  Factors 3 and 5: health and welfare / interests being prejudiced

The third *TRAC* factor looking at whether the delay in adjudication affects health or welfare and the fifth *TRAC* factor looking at the interests being prejudiced are often considered together.  *Khosravi v. Rubio*, No. 2:24-cv-1227, 2025 WL 821885, at *7 (W.D. Wash. Mar. 14, 2025).

Counsel for Defendants conceded at oral argument that these factors likely weigh in favor of Plaintiff.  Plaintiff clearly would suffer hardships in being removed, including separation from family and community, having to reestablish herself in her country of origin after many years in the United States (which presumably would implicate financial challenges), and the inability to pursue her T visa application once removed.  *See* 8 C.F.R. § 214.207(b) (except for certain

situations not alleged, "[a]n applicant who…has been removed from the United States at any time after the act of a severe form of trafficking persons is deemed not be present in the United States").

Accordingly, these two *TRAC* factors weigh in favor of Plaintiff.

> iv. Factor 4: effect of expediting delayed action on agency activities of a higher or competing priority

Courts are hesitant to interfere with an agency's "unique— and authoritative— position to view its projects as a whole, estimate the prospects for each, and allocate resources in the optimal way." *In re Barr Labs, Inc.*, 930 F.2d 72, 76 (D.C. Cir. 1991).

Plaintiff argues her application should be expedited because Defendants ultimately created the need to adjudicate her application immediately by seeking to enforce her removal order. (Dkt. No. 11 at 7.) She further argues USCIS and ICE should be considered as one agency under the Department of Homeland Security umbrella such that ICE's enforcement conduct should not be viewed independently of USCIS's delay in adjudicating Plaintiff's T visa application. (*Id*.) Plaintiff cites no authority in support of these arguments and acknowledged at oral argument that USCIS and ICE have traditionally been viewed as separate agencies. Conversely, Defendants argued that removal enforcement is a priority for the current administration and that ICE's decision to enforce Plaintiff's removal order does not correlate with USCIS's review of Plaintiff's T visa application.

Congress did not bar enforcement of a removal order upon the filing of a T visa application. Nor did it mandate that the T visa application of a person with a final removal order be adjudicated before a removal order is enforced. Additionally, the regulations governing T visa applications explicitly state the filing of a T visa application does not impede the execution

of a final order of removal. *See* 8 C.F.R. 215.204(a)(2)(i). As such, the Court is unable to conclude that Plaintiff's application merits more attention than any of the 3,906 applications filed in the third quarter of fiscal year 2025 or the over 33,000 T visa applications currently pending.

The fourth *TRAC* factor weighs against Plaintiff.

    v. Factor 6: impropriety

Plaintiff is not required to show impropriety, and here, Plaintiff cannot prove impropriety. Plaintiff takes issue with the fact her order of removal has been in effect with no action for well over a decade, with Plaintiff's detention soon after the T visa application was filed, and with ICE's recent removal efforts. Though Plaintiff may disapprove of the current administration's policies or ICE's decision to effectuate her removal, ICE is authorized to effectuate the removal of any individual who has a final order of removal. Based on the current record presented, Plaintiff fails to establish Defendants were acting in response to her T visa application when ICE detained her for the purpose of effectuating removal.

Accordingly, the sixth *TRAC* factor is neutral.

    vi. Summary

Two of the six *TRAC* factors weigh in favor of Plaintiff while three of the six, including the most important factor, weigh against Plaintiff, and one factor is neutral. Having considered these factors, the Court concludes Plaintiff fails to establish there is a likelihood of success on the merits of her unreasonable delay claim and fails to establish a serious question going to the merits of her claim.

### III. ORDER

Although the Court finds it has jurisdiction to hear Plaintiff's Mandamus and APA claims, the Court concludes the relief sought in Plaintiff's motion for TRO is outside the scope

of those claims.  The Court further finds the record Plaintiff presents fails to establish her claims are likely to succeed on the merits or that there is a serious question going to the merits.  Accordingly, Plaintiff's motion for a temporary restraining order (Dkt. No. 2) is DENIED.

The Court recognizes the denial of Plaintiff's motion for TRO may effectively moot the Plaintiff's complaint depending on the action taken by ICE in the near future.  Notwithstanding, Plaintiff at oral argument requested, and the Court granted, leave to amend her complaint.  Should an amended complaint be filed, and depending on what action ICE takes, the Parties should immediately confer and inform the Court of their thoughts on how this matter should proceed.  The Parties shall file a status report **no later than November 24, 2025** or take any other action they believe reasonable and appropriate prior to such date.

The Clerk is directed to calendar this event.

Dated this 20th day of November, 2025.

David G. Estudillo
United States District Judge